UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNIFER F.[1] o/b/o M.C.W.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case # 20-CV-6587-FPG

DECISION AND ORDER

**INTRODUCTION**

Jennifer F. ("Plaintiff") brings this action on behalf of her minor daughter ("M.C.W.") pursuant to Title XVI of the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her application for Supplemental Security Income ("SSI"). ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 1383(c).

On November 16, 2016, Plaintiff applied for SSI with the Social Security Administration ("the SSA") on M.C.W.'s behalf. Tr.[2] 75. She alleged that M.C.W. had been disabled since January 21, 2012, due to learning disability, behavior problems, and anxiety. Tr. 75. The claim was initially denied, Tr. 84, and on May 20, 2019, M.C.W. and Plaintiff testified at a hearing before Administrative Law Judge Stephen C. Fulton ("the ALJ"). Tr. 40-73. On July 2, 2019, the ALJ issued a decision finding that M.C.W. was not disabled. Tr. 12-39. On June 10, 2020, the Appeals

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gfov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 11.

1

Council denied M.C.W.'s request for review. Tr. 1-5. This action seeks review of the Commissioner's final decision.[3] ECF No. 1.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c). ECF Nos. 12, 13. For the reasons that follow, Plaintiff's motion is GRANTED and the Commissioner's motion is DENIED. The matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Child Disability Standard

An individual under 18 years old will be considered disabled if she has a medically determinable physical or mental impairment that results in marked and severe functional limitations that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i).

---

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

The Commissioner must follow a three-step process to evaluate child disability claims. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.924(b). If so, the child is not disabled. If not, the ALJ proceeds to step two and determines whether the child has an impairment, or combination of impairments, that is "severe," meaning that it causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). If the child does not have a severe impairment or combination of impairments, she is "not disabled." If the child does, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment meets, medically equals, or functionally equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d). To determine whether an impairment or combination of impairments functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To "functionally equal the listings," the child's impairment(s) must cause "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

## DISCUSSION

**I.    The ALJ's Decision**

At step one, the ALJ found that M.C.W. had not engaged in substantial gainful work activity. Tr. 18. At step two, the ALJ found that M.C.W. has the following severe impairments: learning disorder; depression; post-traumatic stress disorder; and history of attention deficit hyperactivity disorder. Tr. 18-19. The ALJ determined that Plaintiff's neck pain, torticollis, left

3

arm numbness/weakness, obstructive sleep apnea, and obesity were not severe impairments. Tr. 18-19.

At step three, the ALJ stated that he considered the criteria for depressive disorder, bipolar disorders, neurodevelopmental disorders, and post traumatic stress disorder, and determined that M.C.W. did not have an impairment or combination of impairments that meets or medically equals the severity of any of the Listings.

The ALJ determined that M.C.W. does not have an impairment or combination of impairments that functionally equal the severity of any Listings. With respect to the six functional domains, the ALJ determined that M.C.W. had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself, and no limitation in moving and manipulating objects and health and physical well-being. Tr. 28-35. Because the ALJ did not find M.C.W. to have a "marked" limitation in two domains or an "extreme" limitation in one domain, he concluded that M.C.W. was not disabled. Tr. 35-36.

**II.     Analysis**

Plaintiff argues that (1) the ALJ erred at step two when he failed to evaluate M.C.W.'s diagnoses of oppositional defiance disorder ("ODD") and disruptive mood dysregulation disorder ("DMDD"); (2) the ALJ erred by failing to evaluate the specific criteria of Listing 112.04, which are separate from the criteria for the six functional equivalence domains; and (3) the ALJ erred when he determined that M.C.W. had "less than marked" limitations or "no limitations" in the functional domains. The Court agrees with Plaintiff's first and second arguments so it will not address the third.

At step two, the ALJ determines whether a child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). An impairment or

combination of impairments is not "severe" if it "causes no more than minimal functional limitations." *Id.* Although Plaintiff bears the burden of proof at step two to establish that his impairments are severe, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (1985).

Here, the record shows that M.C.W.'s diagnoses of DMDD and ODD were significant impairments. For example, Vijeta Kushwaha, M.D., M.C.W.'s treating psychiatrist at Strong Behavioral Health, diagnosed M.C.W. with ODD and DMDD. Tr. 372-73. Dr Kushwaha noted that M.C.W.'s DMDD diagnosis took "precedence" over her ODD because M.C.W. had exhibited persistently irritable and angry mood with frequent temper outbursts that were grossly out of proportion to the situation. Tr. 376. He noted that M.C.W. "has a long history of anger-guided disobedience, hostilely defiant behavior toward authority figures at home and school setting that goes beyond the bounds of normal childhood behavior." Tr. 376. He indicated that M.C.W. was "persistently irritable" and had an "angry mood." M.C.W.'s therapist also noted that her primary diagnosis was DMDD, followed by ADHD and ODD. Tr. 417.

These diagnoses are supported by the reports from M.C.W.'s school and her parents. M.C.W.'s mother noted that M.C.W. threatened her siblings with a knife, threw objects at them, and stole from them. Tr. 373. In fact, M.C.W. was suspended from school due to her behaviors and was moved to a different school. Tr. 373.

5

Despite these records, the ALJ did not find M.C.W.'s DMDD or ODD to be severe at step two. In fact, the ALJ did not even mention DMDD or ODD at step two. The ALJ did find that M.C.W.'s learning disorder, depression, PTSD, and ADHD were severe impairments. But those impairments are distinct. Given the record evidence, the ALJ's failure to find DMDD or ODD severe at step two was clear error. *Bradley o/b/o C.B. v. Berryhill*, No. 14-cv-1072, 2017 WL 8287642, at *2 (W.D.N.Y. Aug. 5, 2017) (concluding that ALJ committed clear error when ALJ failed to discuss claimant's ODD at step two despite evidence in the record diagnosing claimant with ODD).

The Commissioner argues that any error is harmless because the ALJ addressed M.C.W.'s ODD and DMDD throughout the decision. But the ALJ simply mentioned these diagnoses in step three; he did not provide any analysis concerning the functional restrictions flowing therefrom. Rather than demonstrate that the ALJ substantively considered M.C.W.'s ODD and DMDD, as the Commissioner argues, the ALJ's passing references to these diagnoses in step three—without analysis—underscore how significant the impairments are, and highlight the ALJ's error in failing to meaningfully address them.

Compounding this error, the ALJ failed to address the specific criteria of Listing 112.04. "When evaluating whether a child's impairments meet or equal a Listing, the ALJ must refer to the specific criteria with sufficient specificity to enable a reviewing court to determine whether the ALJ's decision is supported by substantial evidence." *Lanique Q.R. o/b/o R.L.R. v. Comm'r of Soc. Sec.*, No. 19-cv-1196, 2021 WL 1226472, at *3 (W.D.N.Y. Mar. 31, 2021). Although the ALJ *mentioned* Listing 112.04, he did not set forth *any* criteria or analysis of why M.C.W. did not meet the Listing. The extent of the ALJ's analysis is as follows: "I have considered whether the claimant meets or equals the criteria of listing 112.04 concerning depressive, bi-polar, and related

disorders." Tr. 19.  But Listing 112.04 also includes criteria for ODD and DMDD.  No doubt because the ALJ failed to find DMDD and ODD severe at step two, the ALJ did not analyze whether M.C.W. met Listing 112.04 for DMDD or ODD.

The Commissioner again suggests that this error is harmless because the criteria for Listing 112.04 are similar to the six functional areas the ALJ addressed in step three.  But the two standards are different.  For example, under 20 C.F.R. § 416.926a(b), an ALJ must evaluate a child's abilities in: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[4]  But Listing 112.04(B) also requires an ALJ to evaluate three additional areas of mental functioning: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting and managing oneself.  20 C.F.R. Pt. 404, Sub. P, App'x 1, pt. B2 § 112.04.  Again, although there may be overlap between these two standards, they are distinct and not coextensive.  *Mena v. Comm'r of Soc. Sec.*, No. 1:19-CV-06810 (SN), 2021 WL 1222150, at *13 (S.D.N.Y. Mar. 31, 2021) ("Although there is some overlap between the areas of mental functioning and the six domains, there are critical distinctions that could have changed the ALJ's evaluation of C.M.'s eligibility.").

Accordingly, M.C.W.'s errors in failing to find DMDD and ODD as severe impairments at step two and failing to fully address Listing 112.04 are not harmless, and remand is required.

---

[4] Although the Court will not address Plaintiff's third argument in-depth, the Court pauses briefly to note that there is significant evidence in the record suggesting that M.C.W. is more limited than the ALJ suggests. The ALJ concluded that M.C.W. had "no limitation" in health and well-being and "less than marked limitation" in caring for herself. However, the record is replete to references to M.C.W.'s rapid weight gain. Over less than a year, twelve-year-old M.C.W. gained nearly 100 pounds. In addition to weighing nearly 300 pounds, M.C.W. was diagnosed with sleep apnea and had poor hygiene. Tr. 1029. The Court is skeptical that the ALJ's findings can be squared with these records.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 12, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 13, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 28, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York